COMMONWEALTH OF MASSACHUSETTS

ESSEX, SS.                                                       SUPERIOR COURT
                                                                DEPARTMENT OF THE TRIAL COURT
                                                                CIVIL ACTION NO. _____ 11-1041

| | |
|---|---|
| MAZ PARTNERS LP, on behalf of itself and all others similarly situated, |  |
| Plaintiff, | Jury Trial Demanded |
| v. | |
| BRUCE A. SHEAR, DAVID E. DANGERFIELD, WILLIAM F. GREICO, HOWARD W. PHILLIPS, DONALD E. ROBAR, DOUGLAS J. SMITH, PHC, INC., ACADIA HEALTHCARE COMPANY, INC., and ACADIA MERGER SUB LLC. | |
| Defendants. | |

## VERIFIED CLASS ACTION COMPLAINT

Plaintiff, MAZ Partners LP, alleges the following on information and belief, except as to

the allegations specifically pertaining to Plaintiff, which are based on personal knowledge.

## I.   INTRODUCTION

1.       This action arises out of an unlawful scheme and plan to enable Bruce A. Shear

("Shear") the Chairman, Chief Executive Officer, and controlling shareholder of PHC, Inc., d/b/a

Pioneer Behavioral Health (NYSE: PHC) ("PHC" or the "Company"), to force a merger of PHC

with Acadia Healthcare Company, Inc. ("Acadia"), for grossly inadequate consideration and

through an entirely unfair process in breach of the individual defendants' fiduciary duties.

2.       Specifically, on May 24, 2011, PHC announced that it had entered into an

Agreement and Plan of Merger (the "Merger Agreement") with Acadia, and Acadia Merger Sub,

LLC, a wholly-owned subsidiary of Acadia ("Merger Sub"), pursuant to which PHC will merge

with and into Merger Sub, with Merger Sub continuing as the surviving company (the "Merger" or the "Proposed Transaction"). Upon the completion of the Merger, Acadia stockholders will own approximately 77.5% of the combined company and PHC's stockholders will own approximately 22.5% of the combined company.

3.      The corporate headquarters of the combined company will be in Franklin, Tennessee, doing business under the name Pioneer Behavioral Health.

4.      The combined company's board of directors will consist of 12 directors, including current director and controlling shareholder of PHC, Defendant Shear.

5.      PHC's Board of Directors (the "Board") and executive officers, who hold. in the aggregate, approximately 7.5% of PHC's outstanding Class A Common Stock and approximately 93% of PHC's outstanding Class B Common Stock, have entered into voting agreements with Acadia, whereby they have irrevocably agreed to vote in favor of the Merger.

6.      Pursuant to the terms of the Merger Agreement, at the effective time of the Merger, each share of PHC's Class A Common Stock outstanding immediately prior to the effective time (other than any shares held by dissenting stockholders) will be converted into and become exchangeable for one-quarter (¼) of one share of Acadia Common Stock. Each share of PHC's Class B Common Stock issued and outstanding immediately prior to the effective time (other than any shares held by dissenting stockholders) will be converted into and become exchangeable for (x) one-quarter (¼) of one share of Acadia Common Stock and (y) cash consideration. The aggregate cash consideration for all holders of PHC's Class B Common Stock will be $5,000,000.

7.      All of PHC's outstanding stock options and all of the outstanding warrants to purchase PHC's common stock will be assumed by Acadia in connection with the Merger.

171061                                   - 2 -

8.      In connection with the Merger, the Individual Defendants (defined below), as 93% owners of PHC Class B stock, will receive cash.  Specifically, Defendant Shear and affiliates will receive an additional payment of approximately $4 million as beneficial owner of most of the Class B shares.

9.      Additionally, there will be a payment of a dividend to the equity holders of Acadia prior to the Merger, which will not be enjoyed by PHC's common shareholders.

10.     Further, the Board was granted options early (May, as compared to July in previous years), and thus, in effect will receive extra consideration in the Merger.

11.     Defendant Shear, as the controlling shareholder of the Company, owes fiduciary duties to the public shareholders of the Company to ensure that the Merger is entirely fair to the public shareholders.  Shear, who negotiated the Proposed Transaction on behalf of all shareholders of PHC and, in doing so, negotiated a better deal for himself and the other Class B stockholders than he did for the Class A stockholders, is conflicted and has breached his fiduciary duties by agreeing to a merger that is not entirely fair to PHC's public Class A shareholders.

12.     PHC's Board of Directors also owes independent fiduciary duties to the public shareholders of the Company.  In agreeing to the Merger at its current consideration per share, and in its current form, the Board members have breached their fiduciary duties to the Company's public shareholders.  Specifically, among other things, the Board has agreed to a Merger through an entirely unfair process that favors PHC's controlling shareholder, Shear, and for consideration that is unfair considering the Company's growth prospects.

13.     By this action, Plaintiff seeks to enjoin the Proposed Transaction or, alternatively, to recover damages in the event the Proposed Transaction is consummated.

## II.    PARTIES

14.    Plaintiff MAZ Partners is, and has been at all relevant times, the owner of 293,066 shares of PHC Class A stock.

15.    PHC is incorporated in the Commonwealth of Massachusetts. The Company is a national health care company, which operates subsidiaries specializing in behavioral health services including the treatment of substance abuse, which includes alcohol and drug dependency and related disorders and the provision of psychiatric services. The Company also operates help lines for employee assistance programs, call centers for state and local programs and provides management, administrative and online behavioral health services.

16.    Defendant Bruce A. Shear, a co-founder of Pioneer Behavioral Health, has been President, Chief Executive Officer and a Director of the Company since 1980. He held the position of Treasurer from September 1993 until February 1996. From 1976 to 1980 he served as Vice President, Financial Affairs. According to the PHC Form 10-K filed September 24, 2010, "Bruce A. Shear is in control of the Company since he is entitled to elect and replace a majority of the Board of Directors. Bruce Shear and his affiliates own and control 93.1% of the Class B Common Stock, which elects four of the six members of the Board of Directors. Bruce Shear can establish, maintain and control business policy and decisions by virtue of his control of the election of the majority of the members of the board of directors." PHC Class B Common Stock is entitled to five votes per share as opposed to Class A Common Stock which is entitled to one vote per share.

17.    Defendant David E. Dangerfield ("Dangerfield") has served as a Director of the Company since December 2001. According to the Company's October 27, 2010 Def. 14A Filing, as of June 30, 2010, Dangerfield had 127,500 stock options outstanding.

18.     Defendant William F. Greico ("Greico") has served as a Director of the Company since February 18, 1997.  According to the Company's October 27, 2010 Def. 14A Filing, as of June 30, 2010, Greico had stock 187,000 options outstanding.

19.     Defendant Howard W. Phillips ("Phillips") has served as a Director of the Company since August 27, 1996 and has been employed by the Company as a public relations specialist since August 1, 1995.  According to the Company's October 27, 2010 Def. 14A Filing, as of June 30, 2010, Phillips had 127,500 stock options outstanding.

20.     Defendant Donald E. Robar ("Robar") has served as a Director of the Company since 1985 and as the Treasurer from February 1996 until April 2000.  He served as the Clerk of the Company from 1992 to 1996.  According to the Company's October 27, 2010 Def. 14A Filing, as of June 30, 2010, Robar had 185,000 stock options outstanding.

21.     Defendant Douglas J. Smith ("Smith"), is, and at all relevant times has been, a member of the PHC Board since January 2010.

22.     Defendant Acadia Healthcare Company, Inc., is a Delaware corporation, headquartered in Franklin, Tennessee, and according to the company, was established in January 2006 to develop and operate a network of behavioral health centers across the country.  Acadia provides psychiatric and chemical dependency services to its patients in a variety of settings, including inpatient psychiatric hospitals, residential treatment centers and outpatient clinics and therapeutic school based programs.

23.     Defendant Acadia Merger Sub, LLC, is a Delaware limited liability company and wholly-owned subsidiary of Acadia, created for the sole purpose of effectuating the Merger.  Under the Merger Agreement, PHC will merge with and into Merger Sub, with Merger Sub continuing as the surviving company.

1710n1

### III.   INDIVIDUAL DEFENDANTS' FIDUCIARY DUTIES

24.   The Individual Defendants listed above in paragraphs 16-21, as officers, directors, and/or controlling shareholders of a publicly-traded corporation, have a fiduciary relationship with Plaintiff and other public shareholders of PHC and owe them the highest obligations of good faith, fair dealing, loyalty, due care, and full and candid disclosure, as well as a duty to maximize shareholder value on a sale of the Company.

25.   To diligently comply with their fiduciary duties, the Individual Defendants may not take any action that:

    (a)   Adversely affects the value provided to the corporation's shareholders;

    (b)   Favors themselves or will discourage or inhibit alternative offers to purchase control of the corporation or its assets;

    (c)   Contractually prohibits them from complying with their fiduciary duties;

    (d)   Will otherwise adversely affect their duty to search and secure the best value reasonably available under the circumstances for the corporation's shareholders; and/or

    (e)   Will provide them with preferential treatment at the expense of, or separate from, the public shareholders.

26.   In accordance with their duties of loyalty and good faith, the Individual Defendants are obligated to refrain from:

    (a)   Participating in any transaction where their loyalties are divided;

    (b)   Participating in any transaction where they receive, or are entitled to receive, a personal financial benefit not equally shared by the public shareholders of the corporation; and/or

(c)     Unjustly enriching themselves at the expense or to the detriment of the public shareholders.

27.     The Individual Defendants, as directors, officers, and/or controlling shareholders of the Company, owe the Plaintiff and other public stockholders a duty of candor, which includes the disclosure of all material facts concerning the Proposed Transaction and, ensuring that all disclosed facts are not materially misleading, including, particularly, the fairness of the consideration offered.

28.     The Plaintiff alleges herein that the Individual Defendants knowingly, purposefully, deliberately, willfully, culpably, or recklessly breached their fiduciary duties to PHC's public shareholders, by committing, causing, permitting to be committed, or ratifying, the acts complained of herein.

29.     Because the Individual Defendants have breached their duties of loyalty, good faith and independence in connection with the proposed Merger, the burden of proving the entire fairness of the Proposed Transaction, including all aspects of its negotiation, structure, price and terms, is placed upon them as a matter of law.

30.     Each of the Individual Defendants, by reason of his or her management positions and/or their membership on the Board and/or membership in a group acting in concert that has voting control of the Company, is a controlling person of PHC and has the power and influence, and has exercised the same, to cause PHC to engage in the wrongful practices complained of herein.  Furthermore, by reason of their positions of control, the Individual Defendants are in possession of private corporate information concerning PHC's assets, business and future, creating an imbalance and disparity of knowledge and economic power between them and the public shareholders of the Company which makes it inherently unfair for them to pursue the

Proposed Transaction wherein they will reap disproportionate benefits to the exclusion of the Class A stockholders.

## IV.   CLASS ACTION ALLEGATIONS

31.   Plaintiff brings this action on his own behalf, and as a class action on behalf of all Class A stockholders of the Company, except Defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any of the Defendants, who are being and/or will be harmed or threatened by Defendants' actions as described more fully below (the "Class").

32.   This action is properly maintainable as a class action.

33.   The Class is so numerous that joinder of all members is impracticable. While the exact number of Class members is unknown to Plaintiff, and can be ascertained only through appropriate discovery, Plaintiff believes there are thousands of Class members. As of May 3, 2011, PHC had approximately 18,738,618 shares of Class A Common Stock, and 773,717 shares of Class B Common Stock outstanding. The number and identities of the record holders of PHC's securities can be easily determined from the stock transfer journals maintained by PHC or its agents.

34.   There are questions of law and fact which are common to members of the Class and which predominate over any questions affecting only individual members. The common questions include, inter alia, the following:

(a)   Whether the Individual Defendants have breached their fiduciary duties to secure and obtain the best value reasonable under the circumstances for the benefit of Plaintiff and the other members of the Class in connection with the Merger;

(b)     Whether the Merger is entirely fair to the Class A stockholders of the Company;

(c)     Whether the Individual Defendants have breached their fiduciary duties of candor by failing to disclose all material information concerning the Proposed Transaction;

(d)     Whether the Defendants have breached any of their other fiduciary duties to Plaintiff and the other members of the Class in connection with the Merger including the duties of good faith, fair dealing, loyalty and due care;

(e)     Whether the Board's acceptance of the Merger was in the best interests of PHC's Class A stockholders;

(f)     Whether Defendant Shear, and any of the other Individual Defendants, are engaging in self-dealing in connection with the Proposed Transaction;

(g)     Whether Defendant Shear, and any of the other Individual Defendants, are unjustly enriching themselves and other insiders of PHC;

(h)     Whether the Defendants, in bad faith and/or for improper motives, have impeded or erected barriers to discourage other offers for PHC or its assets;

(i)     Whether the Plaintiff and the other members of the Class would be irreparably harmed were the Proposed Transaction complained of herein consummated;

(j)     Whether consummation of the Merger and the transactions contemplated in connection therewith should be enjoined;

(k)     Whether the members of the Class have sustained damages, and if so, what is the proper measure of damages; and

(I)     Whether Acadia Merger Sub aided and abetted the Individual Defendants'

breaches of fiduciary duties.

35.     Plaintiff is a member of the Class and is committed to prosecuting this action.

Plaintiff has retained competent counsel experienced in litigation of this nature. The claims of

the Plaintiff are typical of the claims of the other members of the Class. Plaintiff does not have

interests antagonistic to or in conflict with those he seeks to represent. Plaintiff is therefore an

adequate representative of the Class.

36.     The likelihood of individual Class members prosecuting separate individual

actions is remote due to the relatively small loss suffered by each Class member as compared to

the burden and expense of prosecuting litigation of this nature and magnitude. Absent a class

action, Defendants are likely to avoid liability for their wrongdoing, and Class members are

unlikely to obtain redress for their wrongs alleged herein. There are no difficulties likely to be

encountered in the management of the Class claims. This Court is an appropriate forum for this

dispute.

37.     The prosecution of separate actions by individual members of the Class would

create the risk of inconsistent or varying adjudications with respect to individual members of the

Class, which would establish incompatible standards of conduct for Defendants, or adjudications

with respect to individual members of the Class which would, as a practical matter, be

dispositive of the interests of the other members not parties to the adjudications or substantially

impair or impede their ability to protect their interests.

38.     Defendants have acted on grounds generally applicable to the Class with respect

to the matters complained of herein, thereby making appropriate the relief sought herein with

respect to the Class as a whole.

## V.   SUBSTANTIVE ALLEGATIONS

### A.   The Unfair Merger Process and Provisions

39.   On May 24, 2011, PHC issued a press release announcing that it and Acadia had entered into a definitive Merger Agreement (the "Press Release").

40.   The Press Release stated that, upon the completion of the Merger, Acadia stockholders will own approximately 77.5% of the combined company, and PHC stockholders will own approximately 22.5% of the combined company. Acadia intends to file a registration statement on Form S-4 with the U.S. Securities and Exchange Commission ("SEC") in connection with the transaction.

41.   Effective with the approval of the Merger, the corporate headquarters will be in Franklin, Tennessee, and the combined company will do business under the name Pioneer Behavioral Health.

42.   Acadia intends to apply for listing of the combined company's common stock to be issued in the Merger on the NASDAQ stock market.

43.   Joey Jacobs, the Chairman and Chief Executive Officer of Acadia, will become the Chairman and Chief Executive Officer of the combined company.

44.   Defendant Shear, President and CEO of PHC, will become the Executive Vice Chairman and a member of the Board of Directors of the combined company.

45.   According to the Press Release, under the terms of the Merger Agreement, the transaction will be a stock-for-stock exchange except for payments to PHC shareholders for fractional shares and $5 million of Merger consideration payable to Class B holders of PHC's privately held securities.

46.     The Individual Defendants, as 93% owners of PHC Class B stock, will receive the $5 million in cash, while the public Class A stockholders will not receive any cash. Specifically, Defendant Shear and affiliates will receive an additional payment of approximately $4 million as beneficial owner of approximately 93% of the Class B shares.

47.     Further according to the Press Release, the Proposed Transaction is expected to be completed in late summer of 2011.

48.     Finally, among other things, the Press Release stated that PHC and Acadia anticipate that, after refinancing existing indebtedness of both companies, payment of the Merger consideration to the Class B holders, payment of a dividend to the equity holders of Acadia prior to the Merger, and payment of fees and expenses relating to the Proposed Transaction, the combined company will have pro forma net funded indebtedness of approximately $285 million.

49.     Further, the Board was granted options early (May, as compared to July in previous years), and thus, in effect will receive extra cash in the Merger.

50.     On May 25, 2011, PHC filed a Form 8-K with the SEC attaching the Merger Agreement. The Merger Agreement was reached by an unfair process and is unfair in substance, as it contains deal protection measures that benefit Defendants and seek to ensure the closing of the Proposed Transaction, to the detriment of PHC's public Class A stockholders.

51.     In conjunction with the Merger Agreement, PHC's directors and executive officers, including the Individual Defendants, who hold, in the aggregate, approximately 7.5% of PHC's outstanding Class A Common Stock, and approximately 93% of PHC's outstanding Class B Common Stock, entered into voting agreements, whereby they irrevocably agreed to vote their shares in favor of the Merger.

52.     PHC's Board contains six members, and, as acknowledged by the Company, is controlled by Defendant Shear. The Board cannot be trusted to act, and has not acted, in the best interests of the Company's public Class A stockholders.

53.     The Merger was not analyzed or recommended by a "special committee" of independent Board members, and there is no evidence that the Board shopped the Company in order to obtain the best possible consideration for PHC's Class A stockholders.

54.     Section 4.19 of the Merger Agreement, entitled "Pioneer Board Approval; Vote Required," provides that "[t]he only votes of the holders of any class of capital stock of Pioneer necessary to approve this Agreement is the affirmative vote of holders of at least (i) two-thirds of the outstanding Pioneer Class A Common Stock and Pioneer Class B Common Stock entitled to vote, voting together as a single class, with the holders of Pioneer Class A Common Stock having one vote per share and the holders of the Pioneer Class B Common Stock having five votes per share, (ii) two-thirds of the outstanding Pioneer Class A Common Stock entitled to vote, voting as a single class, and (iii) two-thirds of the outstanding Pioneer Class B Common Stock entitled to vote, voting as a single class." The voting agreements entered into by the Individual Defendants have ensured that conditions (i) and (iii) have already been satisfied.

55.     The Merger Agreement also contains deal protections measures that are unreasonable considering that (i) the Company is poised for growth, and (ii) management has signaled that it will partner with Acadia unless another bidder could cut them a deal as lucrative as that provided by Acadia. Specifically, Section 6.04 of the Merger Agreement prohibits PHC or the Board from soliciting any competing bids for the Company. Although a potential buyer may make an unsolicited superior proposal for the Company, Section 6.04(d) of the Merger Agreement provides that prior to recommending a "superior proposal," Pioneer shall negotiate

- 13 -

with Acadia to make such adjustments in the terms and conditions of the Merger Agreement "so that such [competing] Acquisition Proposal would cease to constitute a Superior Proposal." This "matching rights" provision has the effect of discouraging potential bidders from investing the time and costs required to make a bid for the Company.

56.     Even if another bidder is willing to engage in a bidding war with Acadia, Section 8.02 provides that if the Company terminated the Merger Agreement in favor of a superior offer, PHC must pay a $3 million termination fee, further discouraging potential bidders from coming forward, representing about 4.2% of the approximated deal value.

57.     As a result of Defendants' unlawful actions, Plaintiff and the other members of the Class will be damaged in that they will not receive their fair portion of the value of the Company's assets and business and will be prevented from obtaining the real value of their equity ownership of the Company.

**B.     The Merger Consideration is Inadequate**

58.     The value of Pioneer Behavioral Health shares that the PHC shareholders will receive will not provide adequate compensation to these shareholders. Based on the statement in the Press Release that "the combined company will have pro forma net funded indebtedness of approximately $285 million," and the assignment of 22.5% of that to PHC shareholders, the Merger consideration is approximately $3.80 per share. This is inadequate because, among other things, the intrinsic value of PHC's stock is materially in excess of $3.80, when considering the Company's potential for future growth and profitability in light of its revenues and earning potential, and impending acquisition of MeadowWood Behavioral Health.

59.     According to its Investor Fact Sheet, PHC is a profitable and expanding national healthcare company, providing behavioral health services through long term contracts and

17.961                                   - 14 -

government agencies and national insurance companies, and major transportation and gaming companies. Patients and customers include individuals with psychiatric, alcohol and drug dependency-related disorders, as well as corporate employees in gaming and transportation industries. PHC operates through two complementary business operating units: 1) hospital and clinical services and 2) integrated delivery services.

60.     Steady bed growth fuels PHC's facility-based business, while outpatient programs and contract support provide a diversified earnings stream.

61.     Pioneer operates in five states and its programs cover more than one million lives, which include substance abuse treatment facilities in Utah and Virginia, and inpatient and outpatient psychiatric facilities in Michigan and Nevada, and has signed an agreement to acquire MeadowWood Behavioral Health, located in New Castle, Delaware. According to The PHC Investor Fact Sheet, the acquisition is "expected to add approximately $15M in annual (TTM) revenue, or approximately a 30% increase over FY 2010 revenues." Consummation of the MeadowWood acquisition is a condition to the Merger.

62.     PHC's Wellplace division offers Internet and telephonic based referral services that includes Employee Assistance Programs ("EAPs") and critical incident services.

63.     PHC's total net revenues for the Second Quarter of 2011 increased 13.7% to $14.6 million.

64.     Income from operations increased 41.8% to $729,000 from continuing operations of $514,000 for the same period in 2009, and the Company "[e]xpect[s] operating margin to be 10% late FY2011" as well as "[i]mproved profitability despite incurring new hospital startup costs."

65.     The Company boasts that "Q2FY11 represents the company's eighth consecutive

profitable quarter."

66.     Despite the Company's impressive performance and its encouraging future outlook, the Individual Defendants, in violation of their fiduciary duties, agreed to the Merger for unfair consideration and pursuant to an unfair process that provides additional cash consideration to Class B stockholders not to be received by the Class A stockholders.

## FIRST CAUSE OF ACTION

### For Breach Of Fiduciary Duties
### (Against the Individual Defendants)

67.     Plaintiff repeats and realleges the foregoing allegations, as if fully set forth herein.

68.     In agreeing to the Merger, the Individual Defendants have initiated a process to merge PHC with Acadia that, because it involves a breach of the duty of loyalty, among others, imposes a heightened fiduciary responsibility on them and requires enhanced scrutiny by the Court. The Individual Defendants owe fundamental fiduciary obligations to the Company's shareholders to take all necessary and appropriate steps to maximize the value of their shares in implementing such a transaction and provide an entirely fair process and price.

69.     As alleged above, the Individual Defendants have violated their fiduciary duties by approving a Merger Agreement that provides insiders with additional compensation, not shared by the Class A stockholders, upon the Merger.

70.     As alleged above, the Individual Defendants have violated their fiduciary duties owed to Plaintiff and the other Class members by approving such an unfair deal, by not even assembling a special committee of independent Board members to consider the fairness of the Merger to Class A stockholders before voting to approve the Merger, and by agreeing to unnecessary deal protection devices to ensure a consummation of the Proposed Transaction.

71.   The Individual Defendants, in failing to disclose the material non-public information in their possession, including the full extent of the future earnings potential of PHC and its expected increase in profitability, have breached and are breaching their fiduciary duties to the members of the Class.

72.   Unless enjoined by this Court, the Individual Defendants will continue to breach their fiduciary duties owed to Plaintiff and the Class, and may consummate the Merger, which will deny Class members their fair share of PHC's excellent growth and future value to the irreparable harm of the Class.

## SECOND CAUSE OF ACTION

### Aiding and Abetting Breaches of Fiduciary Duties
### (Against Acadia Healthcare Company, Inc. and Acadia Merger Sub LLC)

73.   Plaintiff repeats and realleges the foregoing allegations, as if fully set forth herein.

74.   Defendants Acadia and Acadia Merger Sub, Inc. (i.e. "Merger Sub"), have knowingly aided and abetted the breaches of fiduciary duties committed by the Individual Defendants to the detriment of PHC's Class A public stockholders. Acadia enticed the controlling shareholder of PHC and other Class B common stockholders into entering into the Merger Agreement and the voting agreements by agreeing to provide them with cash consideration not shared in by the Class A stockholders, among other things. Acadia and Merger Sub also demanded deal protection measures, including an excessive termination fee, matching rights, and a no solicitation clause while enticing PHC's management to enter into a deal with them while knowing that the Individual Defendants had failed to adequately ascertain PHC's transactional value or institute a fair process. Acadia and Merger Sub thereby facilitated the Individual Defendants' breaches of fiduciary duties in the Merger of the Company. Further,

Acadia and its investors are the intended beneficiaries of the wrongs complained of and would be unjustly enriched absent relief in this action.

75.     Plaintiff and the other members of the Class have no adequate remedy at law.

**WHEREFORE**, Plaintiff demands judgment against Defendants, jointly and severally, as follows:

A.      Declaring this action to be a class action and certifying Plaintiff as the Class representative and Plaintiff's counsel as Class counsel;

B.      Preliminarily and permanently enjoining Defendants and all those acting in concert with them from taking any steps to consummate the Proposed Transaction;

C.      Ordering the Individual Defendants to carry out their fiduciary duties to Plaintiff and the other members of the Class by announcing their intention to:

(i)     cooperate fully with any person or entity having a bona fide interest in proposing a transaction that would maximize shareholder value, including, but not limited to, a buyout or takeover of the Company;

(ii)    undertake an appropriate valuation of PHC's worth as a merger/acquisition candidate; and

(iii)   ensure that the Class A stockholders are treated equally as compared with the Class B stockholders;

D.      If the Proposed Transaction is consummated, directing Defendants, jointly and severally, to account to Plaintiff and the Class for all damages suffered as a result of the wrongs complained of herein;

E.      Awarding Plaintiff the costs and disbursements of this action, including a reasonable allowance for the fees and expenses of Plaintiff's attorneys and experts; and

F.     Granting such other and further relief as may be just and fair in the premises.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury on any facts and issues so triable.

Dated: June 1, 2011

BERMAN DEVALERIO

By: _____

Norman Berman (BBO# 040460)
Nathaniel L. Orenstein (BBO# 664513)
Berman DeValerio
One Liberty Square
Boston, MA 02109
Tel: 617-542-8300
Fax: 617-542-1194

*Attorneys for Plaintiff*

OF COUNSEL:

**WOLF POPPER LLP**
845 Third Avenue
New York, New York 10022
(212) 759-4600

- 19 -

## VERIFICATION

I, Walter Schenker, the undersigned, on behalf of MAZ Partners LP, hereby

certify and declare that I have read the foregoing complaint and know its contents.  MAZ

Partners LP is a party to this action.  The matters stated in the document described above

are true to my own knowledge and belief, except as to those matters stated on information

and belief, and as to those matters, I believe them to be true.  I hereby declare under

penalty of perjury that the foregoing is true and correct.


Date: June 1, 2011

*Walter Schenker*  Principal
Walter Schenker, for MAZ Partners LP

(TO PLAINTIFF'S ATTORNEY: *Please Circle Type of Action Involved:*   -   TORT   -   MOTOR VEHICLE TORT -
CONTRACT   -   EQUITABLE RELIEF   -   OTHER.)

# COMMONWEALTH OF MASSACHUSETTS

ESSEX, ss.

SUPERIOR COURT
CIVIL ACTION
No.

....................................... Maz Partners LP ................................................ , Plaintiff(s)

v.

............................... Bruce A. Shear et al, ............................... , Defendant(s)

## SUMMONS

To the above named Defendant:

PHC, Inc.
200 Lake Street
Peabody, MA 01960

You are hereby summoned and required to serve upon _Nathaniel Orenstein of Berman DeValerio_ .

plaintiff's attorney, whose address is _One Liberty Sq., Boston, MA 02019_ , an answer to the

complaint which is herewith served upon you, within 20 days after service of this summons upon you, exclusive of the

day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the

complaint. You are also required to file your answer to the complaint in the office of the Clerk of this court at

_____Salem_____ either before service upon plaintiff's attorney or within a reasonable time thereafter.

Unless otherwise provided by Rule 13 (a), your answer must state as a counterclaim any claim which you may
have against the plaintiff which arises out of the transaction or occurrence that is the subject matter of the plaintiff's
claim or you will thereafter be barred from making such claim in any other action.

WITNESS, BARBARA J. ROUSE   , Esquire, at Salem, the
day of                                , in the year of our Lord two thousand

*Thomas H. Driscoll Jr.*
*Clerk*

NOTES:
1. This summons is issued pursuant to Rule 4 of the Massachusetts Rules of Civil Procedure.
2. When more than one defendant is involved, the names of all defendants should appear in the caption. If a separate summons is used for each
defendant, each should be addressed to the particular defendant.

NOTICE TO DEFENDANT - You need not appear personally in court to answer the complaint, but if you claim to have a defense, either you or your attorney must serve a copy of your written answer within 20 days as specified herein and also file the original in the Clerk's Office

## PROOF OF SERVICE OF PROCESS

I hereby certify and return that on_____ , 20     , I served a copy of the within summons, together with a copy of the complaint in this action, upon the within-named defendant, in the following manner (see Mass. R. Civ. P. (d) (1-5):

_____

_____

_____

Dated:                        , 20     .                _____

N.B.    TO PROCESS SERVER:-
        PLEASE PLACE DATE YOU MAKE SERVICE ON DEFENDANT IN
        THIS BOX ON THE ORIGINAL AND ON COPY SERVED ON DEFENDANT.

        ┌─────────────────────────────────────┐
        │                                     │
        │                          , 20     . │
        │                                     │
        └─────────────────────────────────────┘

COMMONWEALTH OF MASSACHUSETTS

ESSEX, SS.

SUPERIOR COURT
CIVIL ACTION
No.

Plaintiff(s)

v.

Defendant(s)

SUMMONS
(Mass. R. Civ. P. 4)

06/02/2011 10:25 FAX                                                      ☒002/003

| **CIVIL ACTION COVER SHEET** | TRIAL COURT OF MASSACHUSETTS SUPERIOR COURT DEPARTMENT | DOCKET NO. J1-1041 P |
|---|---|---|
| | COUNTY OF ESSEX | |
| **PLAINTIFF(S)** MAZ PARTNERS LP, on behalf of itself and all others similarly situated | **DEFENDANT(S)** BRUCE A. SHEAR, et al. | |

| Type Plaintiff's **Attorney name, Address, City/State/Zip Phone Number and BBO#** | Type Defendant's Attorney Name, Address, City/State/Zip Phone Number (If Known) |
|---|---|
| Norman Berman (BBO #040460) Nathaniel Orenstein (BBO #664513) BERMAN DEVALERIO 1 Liberty Square, Boston, MA 02109 (617) 542-8300 | |

**TYPE OF ACTION AND TRACK DESIGNATION** (See reverse side)

CODE NO.      TYPE OF ACTION (specify)      TRACK          IS THIS A JURY CASE?

**D99 Other Equitable Remedies (specify) - Fast Track**      ( ⊙ ) Yes   ( ⌐ ) No

The following is a full, itemized and detailed statement of the facts on which plaintiff relies to determine money damages. For this form, disregard double or treble damage claims; indicate single damages only.

**TORT CLAIMS**
(Attach additional sheets as necessary)

A. Documented medical expenses to date:
   1. Total hospital expenses        $_____
   2. Total doctor expenses        $_____
   3. Total chiropractic expenses        $_____
   4. Total physical therapy expenses        $_____
   5. Total other expenses (describe)        $_____
                       Subtotal  $_____
B. Documented lost wages and compensation to date        $_____
C. Documented property damages to date        $_____
D. Reasonably anticipated future medical expenses        $_____
E. Reasonably anticipated lost wages and compensation to date   $_____
F. Other documented items of damages (describe)        $_____
G. Brief description of plaintiff's injury, including nature and extent of injury (describe)

                                        Total $_____

**CONTRACT CLAIMS**
(Attach additional sheets as necessary)
Provide a detailed description of claim(s):

                                  TOTAL   $..............

PLEASE IDENTIFY, BY CASE NUMBER, NAME AND COUNTY, ANY RELATED ACTION PENDING IN THE SUPERIOR COURT DEPARTMENT

"I hereby certify that I have complied with the requirements of Rule 5 of the Supreme Judicial Court Uniform Rules on Dispute Resolution (SJC Rule 1:18) requiring that I provide my clients with information about court-connected dispute resolution services and discuss with them the advantages and disadvantages of the various methods."

Signature of Attorney of Record _____   Date: 6/1/11

A.O.S.C. 3-2007

## CIVIL ACTION COVER SHEET INSTRUCTIONS
### SELECT CATEGORY THAT BEST DESCRIBES YOUR CASE

| * CONTRACTS | | * REAL PROPERTY | | MISCELLANEOUS | |
|---|---|---|---|---|---|
| A01 Services, Labor and Materials F) | | C01 Land Taking (eminent domain) | (F) | E02 Appeal from Administrative | |
| A02 Goods Sold and Delivered | (F) | C02 Zoning Appeal, G.L. c.40A | (F) | Agency G.L. c. 30A | (X) |
| A03 Commercial Paper | (F) | C03 Dispute concerning title | (F) | E03 Claims against Commonwealth | |
| A08 Sale or Lease of Real Estate | (F) | C04 Foreclosure of mortgage | (X) | or Municipality | (A) |
| A12 Construction Dispute | (A) | C05 Condominium Lien & Charges | (X) | E05 Confirmation of Arbitration Awards | (X) |
| A99 Other (Specify) | (F) | C99 Other (Specify) | (F) | E07 G.L. c.112, s.12S (Mary Moe) | (X) |
| E03 Claims against Commonwealth | (A) | E03 Claims against Commonwealth | (A) | E08 Appointment of Receiver | (X) |
| or Municipality | | or Municipality | | E09 General Contractor bond, | |
| | | | | G.L. c. 149, ss. 29, 29a | (A) |
| *TORT | | EQUITABLE REMEDIES | | E11 Worker's Compensation | (X) |
| | | D01 Specific Performance of Contract | (A) | E12 G.L.c.123A, s.12 (SDP Commitment) | (X) |
| B03 Motor Vehicle Negligence | (F) | D02 Reach and Apply | (F) | E14 G.L. c. 123A, s. 9 (SDP Petition) | |
| personal injury/property damage | | D06 Contribution or Indemnification | (F) | E15 Abuse Petition, G. L. c. 209A | (X) |
| B04 Other Negligence- | (F) | D07 Imposition of a Trust | (A) | E16 Auto Surcharge Appeal | (X) |
| personal injury/property damage | | D08 Minority Stockholder's Suit | (A) | E17 Civil Rights Act, G.L. c.12, s. 11H | (A) |
| B05 Products Liability | (A) | D10 Accounting | (A) | E18 Foreign Discovery Proceeding | (X) |
| B06 Malpractice-Medical | (A) | D12 Dissolution of Partnership | (F) | E19 Sex Offender Registry G.L. c. 178M, | |
| B07 Malpractice-Other (Specify) | (A) | D13 Declaratory Judgment G.L. c. 231A | (A) | s. 6 | (X) |
| B08 Wrongful Death, G.L. c.229, s.2A | (A) | D99 Other (Specify) | (F) | E25 Plural Registry (Asbestos cases) | |
| B15 Defamation (Libel-Slander) | (A) | | | E95 **Forfeiture G.L. c. 94C, s. 47 | (F) |
| B19 Asbestos | (A) | | | E96 Prisoner Cases | (F) |
| B20 Personal Injury- slip & fall | (F) | | | E97 Prisoner Habeas Corpus | (X) |
| B21 Environmental | (F) | | | E99 Other (Specify) | (X) |
| B22 Employment Discrimination | (F) | | | | |
| B99 Other (Specify) | (F) | | | | |
| E03 Claims against Commonwealth | (A) | | | | |

*Claims against the Commonwealth or a municipality are type E03, Average Track, cases.
**Claims filed by the Commonwealth pursuant to G L c 94C, s 47 Forfeiture cases are type
E95, Fast track.

TRANSFER YOUR SELECTION TO THE FACE SHEET.

EXAMPLE.

| CODE NO. | TYPE OF ACTION (SPECIFY) | TRACK | IS THIS A JURY CASE? |
|---|---|---|---|
| B03 | Motor Vehicle Negligence-Personal Injury | (F) | [ X ] Yes     [ ] |

### SUPERIOR COURT RULE 29

DUTY OF THE PLAINTIFF. The plaintiff or his/her counsel shall set forth, on the face sheet (or attach additional sheets as necessary), a statement specifying in full and itemized detail the facts upon which the plaintiff then relies as constituting money damages. A copy of such civil action cover sheet, including the statement as to the damages, shall be served on the defendant together with the complaint. If a statement of money damages, where appropriate is not filed, the Clerk-Magistrate shall transfer the action as provided in Rule 29(5)(C).

DUTY OF THE DEFENDANT. Should the defendant believe the statement of damages filed by the plaintiff in any respect inadequate, he or his counsel may file with the answer a statement specifying in reasonable detail the potential damages which may result should the plaintiff prevail. Such statement, if any, shall be served with the answer.

### A CIVIL ACTION COVER SHEET MUST BE FILED WITH EACH COMPLAINT.

### FAILURE TO COMPLETE THIS COVER SHEET THOROUGHLY AND ACCURATELY
### MAY RESULT IN DISMISSAL OF THIS ACTION.

COMMONWEALTH OF MASSACHUSETTS

ESSEX, SS

SUPERIOR COURT
DEPARTMENT OF THE TRIAL COURT
CIVIL ACTION NO. _____ *11 - 1041*

| | |
|---|---|
| MAZ PARTNERS LP, on behalf of itself and all others similarly situated,<br><br>        Plaintiff,<br><br>v.<br><br>BRUCE A. SHEAR, DAVID E. DANGERFIELD, WILLIAM F. GREICO, HOWARD W. PHILLIPS, DONALD E. ROBAR, DOUGLAS J. SMITH, PHC, INC., ACADIA HEALTHCARE COMPANY, INC., and ACADIA MERGER SUB LLC,<br><br>        Defendants. | <br><br>Jury Trial Demanded |

## MOTION FOR SPECIAL PROCESS SERVERS

Plaintiff Maz Partners LP ("Plaintiff"), respectfully moves this Court, pursuant to Mass. Superior Court Rule 9A(e)(1), for an Order in the form attached hereto, appointing process servers DHR & Associates and N.Y. Server LLC as special process servers for the purpose of serving a Complaint upon Defendants: Bruce A. Shear, David E. Dangerfield, William F. Greico, Howard W. Phillips, Donald E. Robar, Douglas J. Smith, PHC, Inc., Acadia Healthcare Company, Inc., and Acadia Merger Sub LLC.

In support of this motion, Plaintiff states that the appointment of the special process servers will result in a material savings of time and expense in the service of process in this action.

A TRUE COPY ATTEST

DEPUTY ASS'T. CLERK

WHEREFORE, Plaintiff respectfully requests that the special process servers be appointed.

Dated June 1, 2011                          Respectfully submitted,

                                            **BERMAN DEVALERIO**

                                            By:

                                            Norman Berman (BBO # 040460)
                                            Nathaniel Orenstein (BBO # 664513)
                                            One Liberty Square
                                            Boston, MA 02109
                                            Tel. (617) 542-8300
                                            Fax (617) 542-1194
                                            nberman@bermandevalerio.com
                                            norenstein@bermandevalerio.com

                                            *Attorneys for Plaintiff*

OF COUNSEL:

**WOLF POPPER LLP**
845 Third Avenue
New York, New York 10022
(212) 759-4600

A TRUE COPY, ATTEST

DEPUTY ASS'T. CLERK

COMMONWEALTH OF MASSACHUSETTS

ESSEX, SS.

SUPERIOR COURT
DEPARTMENT OF THE TRIAL COURT
CIVIL ACTION NO. 11-1041

| | |
|---|---|
| MAZ PARTNERS LP, on behalf of itself and all others similarly situated,<br><br>    Plaintiff,<br><br>    v.<br><br>BRUCE A. SHEAR, DAVID E. DANGERFIELD, WILLIAM F. GREICO, HOWARD W. PHILLIPS, DONALD E. ROBAR, DOUGLAS J. SMITH, PHC, INC., ACADIA HEALTHCARE COMPANY, INC., and ACADIA MERGER SUB LLC,<br><br>    Defendants. | |

## PLAINTIFF'S FIRST REQUEST FOR THE PRODUCTION OF DOCUMENTS DIRECTED TO ALL DEFENDANTS

Pursuant to Rules 26 and 34 of the Massachusetts Rules of Civil Procedure, Plaintiff requests that Defendants produce the documents listed below at the offices of Berman DeValerio, One Liberty Square, Boston, MA 02109, or at such other place as counsel may agree.

## DEFINITIONS

1.      "You" and/or "Yours" as used herein refer to the parties to whom this request is directed, individually or collectively.

2.      "PHC" or the "Company" mean PHC, Inc., each of its subsidiaries, divisions, subdivisions, affiliated Persons (defined below), predecessors, and all present and former

directors, officers, employees, investment bankers, representatives, agents, intermediaries, and all other Persons acting on its behalf.

3.      The "Board" means the board of directors of the Company.

4.      "Directors" refers to Defendants Bruce A. Shear, David E. Dangerfield, William F. Greico, Howard W. Phillips, Donald E. Robar, and Douglas J. Smith.

5.      "Acadia" means Acadia Healthcare Company. Inc., each of its subsidiaries, divisions, subdivisions, affiliated Persons, predecessors, and all present and former directors, officers, employees, investment bankers, representatives, agents, intermediaries, and all other Persons acting on its behalf, including Acadia Merger Sub LLC.

6.      "Jeffries" means Jeffries & Company. Inc., each of its subsidiaries, divisions, subdivisions, affiliated Persons, predecessors, and all present and former directors, officers, employees, investment bankers, representatives, agents, intermediaries, and all other Persons acting on its behalf.

7.      The "Merger" means the proposed merger announced on May 24, 2011, between PHC and Acadia, whereby Acadia stockholders will own approximately 77.5% of the combined company and PHC's stockholders will own approximately 22.5% of the combined company.

8.      "Shareholder" means any holder of the Company's common stock.

9.      "Person" refers to any natural person, or any business, legal or governmental entity or association.

10.      "Documents" or "Document" mean any kind of written, recorded or graphic matter, whether produced, reproduced or stored on paper, cards, tapes, film, recordings (tape, disk or other), electronic facsimile, e-mail, computer storage devices, handheld devices (Blackberries, iPhones, PDAs, etc.) or any other media, of any kind or description, whether sent

or received or neither, and includes, but is not limited to, originals, copies (with or without notes or changes) and drafts, including but not limited to: electronically stored information (including metadata); instant messages; text messages; papers; books; letters or other correspondence; photographs; objects; tangible things; telegrams; cables; telex messages; memoranda; notes; notations; work papers; transcripts, minutes, reports and recordings of conversations, interviews, conferences, or other meetings; affidavits; statements; summaries; opinions; reports; studies; analyses; evaluations; contracts; proposed transactions; journals; statistical records; desk calendars; appointment books; diaries; lists; tabulations; sound recordings; computer printouts; data processing input and output; microfilm; all other records kept by electronic, photographic or mechanical means; and things similar to any of the foregoing however denominated in the possession, custody or control of any defendant or officer, director, employee, attorney, accountant, representative or agent, consultant or other Person acting on behalf of any of the defendants, including (without limitation) any attorney who has any such documents which are not subject to a claim of attorney-client privilege or attorney work product.  The term "Document" refers to all writings and tangible things of any kind (including the originals and all non-identical copies, whether different from the original by reason of any notation made on the copies or otherwise).  The term "Document" includes, without limitation, any communication (as defined below).

11.   "Communication" means the transmittal of information (in the form of facts, ideas, inquiries or otherwise).  The term "Communication" includes, without limitation, Documents.

12.   "Concerning" means relating to, referring to, describing, evidencing or constituting.

## INSTRUCTIONS

1.      The definitions and requirements contained in the Massachusetts Rules of Civil Procedure are incorporated herein by reference.

2.      The instant request for documents shall be deemed to be continuing so as to require supplemental production should defendants or their counsel obtain further or supplemental documents between the time that the documents initially are presented and the time of trial.

3.      The following rules of construction shall apply to all document requests:

(a)      All/Each. The terms "all" and "each" shall be construed as all and each.

(b)      And/Or. The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the document request all responses that might otherwise be construed to be outside its scope.

(c)      Number. The use of the singular form of any word includes the plural and vice versa.

4.      You are requested to produce all documents in your possession, custody or control that are described below. This includes documents that are in the possession of your partners, directors, officers, employees, attorneys, accountants, representatives or agents, or that are otherwise subject to your custody or control.

5.      All documents must be produced in their entirety, including all attachments and enclosures, and in their original folder, binder, other cover or container unless that is not possible. Whenever a document or group of documents is removed from a file folder, binder, file drawer, file box, notebook, or other cover or container, a copy of the label of such cover or other container must be attached to the document.

6.     If any document was, but is no longer, in your possession or subject to your control, state (in writing at the time of production) whether it:  (a) is missing or lost; (b) has been destroyed; (c) has been transferred voluntarily or involuntarily to others; or (d) is otherwise disposed of, and in each instance explain the circumstances of such disposition, and state the approximate date thereof.

7.     If you withhold any document requested herein on the basis of a claim that it is protected from disclosure by privilege, attorney work product, or otherwise, provide the following information separately for each such document, in writing, at the time of production:

(a)     The name(s) and title(s) of the author(s) and/or sender(s) and of the addressee(s) and any other recipient(s);

(b)     The name and title of each Person (other than stenographic or clerical assistants) participating in the preparation of the document and its date;

(c)     The name and title of each Person to whom the contents of the document have heretofore been disseminated by copy, exhibition, reading or substantial summarization;

(d)     Whether the document has attachment(s) or is an attachment to another document, and identify those attachment(s) or parent documents by bates number or privilege log entry number;

(e)     A description of the nature and subject matter of the document;

(f)     A statement of the basis on which it is claimed that the document is protected from disclosure; and

(g)     The name and title of the Person providing the information requested in subparagraphs (a) through (f) above.

8.     Notwithstanding a claim that a document is protected from disclosure, any Document so withheld must be produced with the portion claimed to be protected excised.

9.     All electronically stored information, emails and other documents that were created, stored or existed in electronic or computerized format and that are responsive to these requests must be produced in a fully text readable and searchable TIFF format with a corresponding load file containing all metadata fields, including but not limited to the following fields: author, to, from, cc, bcc, subject, attachment, date and time sent, date and time created, date and time received, page count, beginning document/bates number and ending documents/bates number.     In addition, all electronic and computerized spreadsheets, presentations, databases, and other Documents that cannot be adequately rendered in TIFF format, that are responsive to these requests must also be produced in native format.


## RELEVANT TIME PERIOD

Unless otherwise specified, each document request concerns the time period from June 1, 2010, to the time of production (the "Relevant Time Period").     Each request calls for all documents dated, prepared, drafted, generated, sent, provided, obtained or received during the Relevant Time Period that are responsive, in whole or in part, to the request.  If a document prepared before this period is necessary for a correct or complete understanding of any document covered by a request, you must produce the earlier or subsequent document as well.  If any document is undated and the date of its preparation cannot be determined, the document shall be produced if otherwise responsive to the production request.

171134-1                                     6

## DOCUMENT REQUESTS

1.     Charts or other graphic presentations sufficient to describe or depict the structure of PHC, its management, subsidiaries, divisions, subdivisions, affiliates or other corporate subdivisions, the relationship among them, and/or any changes therein that occurred during the Relevant Time Period.

2.     All minutes or notes of, and documents distributed at or in connection with, meetings of the Board or any committee thereof concerning any of the following topics: (a) the Merger; (b) any strategic alternatives explored on behalf of the Company other than the Merger; (c) the establishment of any special committee of the Board concerning the Merger or any strategic alternatives; (d) the value of the Company and/or its common shares; (e) the retention of an investment advisor, banker, financial analyst, accountant, tax advisor or financial advisor in connection with exploring the Merger or any strategic alternatives; (f) any "due diligence" related to the Merger or any strategic alternatives; (g) any acquisition proposal, concerning the entire Company or portions thereof ("Acquisition Proposal"), by any entity other than Acadia; and (h) the projected and/or anticipated future value of PHC, and all communications to, from, or copied to any member of the Board or any committee thereof concerning any such topic.

3.     All documents concerning the Merger, any other Acquisition Proposal, or any alternative thereto, that the Board, or any committee thereof, and/or their financial advisor(s) reviewed or considered prior to authorizing the Merger.

4.     All documents regarding negotiations with potential or actual bidders for PHC or negotiating strategy.

5.     All documents concerning the engagement or retention of any financial advisor (including Jeffries) and/or experts in connection with the Merger, any Acquisition Proposal or any alternative thereto.

6.     All communications between PHC or any of the Directors, on the one hand, and any financial advisor(s) retained by any of them (including Jeffries), on the other hand, concerning the Merger, any Acquisition Proposal or any alternative thereto.

7.     All documents supplied to, received from, or referencing any investment advisor, banker, financial analyst, accountant, tax advisor or financial advisor, including Jeffries, concerning the Merger, any Acquisition Proposal or alternative thereto.

8.     All documents concerning the valuation, appraisal or estimated value of PHC's operations, all or substantially all of its assets, or its outstanding stock.

9.     All documents concerning the present or future value of PHC, including all budgets, forecasts, business plans or projections of revenues, assets, liabilities, capital, expenses, sales, inventories, gross margins, working capital, cash flow, profits, net profits, losses or earnings per share.

10.     All documents that You or Jeffries received, reviewed or prepared in connection with or related to the Merger, any Acquisition Proposal or any alternative thereto, containing projected and/or actual financial results for PHC, including financial projections, budgets, forecasts, balance sheets, income statements, and cash flow statements.

11.     All documents concerning any assumptions underlying any projections and/or forecasts contained or referenced in any documents produced in response to the previous request.

12.     Documents sufficient to show the Company's current expansion plans, including the agreement to acquire MeadowWood Behavioral Health.

13.     All documents concerning the valuation, appraisal or estimated value of Acadia's operations, all or substantially all of its assets, or its outstanding stock.

14.   All documents concerning the present or future value of Acadia, including all budgets, forecasts, business plans or projections of revenues, assets, liabilities, capital, expenses, sales, inventories, gross margins, working capital, cash flow, profits, net profits, losses or earnings per share.

15.   All documents that You or Jeffries received, reviewed or prepared in connection with or related to the Merger, any Acquisition Proposal or any alternative thereto, containing projected and/or actual financial results for Acadia, including financial projections, budgets, forecasts, balance sheets, income statements, and cash flow statements.

16.   All documents concerning any assumptions underlying any projections and/or forecasts contained or referenced in any documents produced in response to the previous request.

17.   Documents sufficient to show the present financial impact of MeadowWood Behavioral Health on the Company's overall financial condition and any projections of MeadowWood Behavioral Health's expected future impact on the Company's overall financial condition.

18.   All documents that consider, concern, evaluate, analyze, question, state or refer to whether the Merger or any alternative to the Merger should be entered into or would be in the best interest of the Shareholders.

19.   All documents or communications related to any efforts to "shop," conduct a "market check," sell, reorganize, recapitalize or restructure PHC.

20.   All documents concerning the identity of, and any discussions with, any interested third parties concerning any Acquisition Proposal or any alternative thereto.

21.    All documents concerning the consideration to be received by the Shareholders in connection with the Merger, including, without limitation, all documents concerning the negotiation and calculation of such consideration.

22.    All documents concerning any confidentiality agreements entered into by PHC, Acadia, the Board, or any committee thereof, or any of the Directors, in connection with the Merger of any Acquisition Proposal or any alternative thereto.

23.    All documents concerning the $5 million cash consideration to be received by holders of PHC's Class B Common Stock in connection with the Merger, including, without limitation, all documents concerning the negotiation and calculation of such consideration.

24.    All documents concerning any analysis, evaluation, consideration or review of the rights of the Shareholders in connection with the Merger, including, without limitation, potential dissenters' or appraisal rights.

25.    All documents concerning communications or meetings with any securities analyst, broker, consultant, investment bank, lender or other member of the financial community regarding the Merger or the Company's financial prospects.

26.    All analyst reports, opinions, and recommendations concerning PHC.

27.    All documents concerning any committee or group of PHC Directors established to review or consider the Merger or any alternative to the Merger, including, but not limited to, documents concerning the formation, selection of members, powers, meetings, compensation and communications of any such committee or group.

28.    All documents concerning the transmittal or exchange of non-public documents or other information between PHC, on the one hand, and Acadia, on the other hand, or between any of their respective legal or financial representatives (including Jeffries), concerning the Merger.

171134-1                                                      10

29.     All non-public documents concerning PHC's business and affairs transmitted to Acadia or any potential purchaser (including banker's presentation books) by PHC or any representative or advisor to PHC.

30.     Any calendars, diaries, notes, notebooks maintained by you concerning the Merger, any Acquisition Proposal or any alternative thereto.

31.     All documents related to any financial due diligence performed in anticipation of the Merger.

32.     Documents sufficient to identify the benefits to be received by the Directors and any officers of PHC in connection with the Merger, including financial payments relating to stock options, restricted stock, performance awards, and severance and/or change in control agreements, as well as any documents relating to any actual or expected employment or consulting agreements relating to work for the successor entity to PHC after the Merger.

33.     All documents concerning any proposed or actual employment, consulting, loan or business contact, agreement or arrangement (whether presently in force or previously completed), or other proposed or actual contract, agreement or arrangement between any financial advisor, investment advisor, banker or financial analyst retained by PHC or the Board, in connection with the Merger or exploring strategic alternatives, including, but not limited to, Jeffries, on the one hand, and Acadia, on the other hand.

34.     Documents sufficient to identify the nature and extent of work performed in connection with any past, present or future engagement of any financial advisor (including Jeffries) retained in connection with the Merger, any Acquisition Proposal or any alternatives thereto, for Acadia, PHC or any Director, as well as fees earned (or expected to be earned) for that work.

35.     All documents concerning financing commitments to Acadia by Jeffries Finance LLC ("Jeffries Finance") to support the Merger and how Jeffries Finance came to provide financing commitments to Acadia regarding the Merger.

36.     Documents sufficient to show the relationship, if any, between Jeffries and Jeffries Finance.

37.     All documents concerning any of the Director's purchases, sales, gifts, grants, options or ownership, either directly, indirectly or beneficially, of PHC, Acadia, Jeffries or Jeffries Finance securities of any type or class.

38.     All documents concerning any loans to the Directors and/or any officers of PHC, including any agreements by which any of the Directors or such officers borrowed money or received any incentives or any gifts from PHC, Acadia, Jeffries Finance or Jeffries.

39.     All documents concerning any voting agreement(s), entered into in connection with the Merger, and/or the reasons for such voting agreement(s).

40.     All documents concerning any communications between You and any federal, state or local government agency concerning the Merger.

41.     The working group lists for the Merger or other documentation identifying the personnel at PHC, Acadia, and their respective financial advisors (including Jeffries) in connection with the Merger.

42.     All documents concerning any insurance policy taken out by, or for Your benefit, or the benefit of PHC or the Directors, which may provide coverage for any part of the claims asserted in this litigation.

43.     All documents concerning your document retention or destruction policy, including, but not limited to, any document retention or destruction policy concerning electronic

mail (e-mail), computer disc film, electronically stored information, computer storage devices, handheld devices (Blackberries, iPhones, PDAs, etc.) or other electronic or computerized media.

Dated: June 7, 2011

BERMAN DEVALERIO

By: _____

Norman Berman (BBO# 040460)
Nathaniel L. Orenstein (BBO# 664513)
Berman DeValerio
One Liberty Square
Boston, MA 02109
Tel: 617-542-8300
Fax: 617-542-1194

*Attorneys for Plaintiff MAZ Partners LP*

OF COUNSEL:

**WOLF POPPER LLP**
845 Third Avenue
New York, New York 10022
(212) 759-4600

13

COMMONWEALTH OF MASSACHUSETTS

ESSEX, SS.                                     SUPERIOR COURT
                                               DEPARTMENT OF THE TRIAL COURT
                                               CIVIL ACTION NO. 11-1041

| | |
|---|---|
| MAZ PARTNERS LP, on behalf of itself and all others similarly situated,<br><br>      Plaintiff,<br><br>    v.<br><br>BRUCE A. SHEAR, DAVID E. DANGERFIELD, WILLIAM F. GREICO, HOWARD W. PHILLIPS, DONALD E. ROBAR, DOUGLAS J. SMITH, PHC, INC., ACADIA HEALTHCARE COMPANY, INC., and ACADIA MERGER SUB LLC,<br><br>      Defendants. | |

## EMERGENCY MOTION FOR EXPEDITED DISCOVERY

Plaintiff respectfully moves this Court for an Order directing expedited discovery in the above captioned action ("Action"). Specifically, Plaintiff requests an order of the Court requiring Defendants to produce documents within fourteen (14) days and for Defendants to produce witnesses for deposition within fourteen (14) days of Defendants responding to Plaintiff's discovery requests. In support of this motion (the "Motion"), Plaintiff relies upon all the filings in the Action and the accompanying Memorandum of Law in Support of Emergency Motion for Expedited Discovery (the "Memorandum").

Plaintiff styles this Motion as an emergency motion pursuant to Superior Court Rule 9A(e)(1), because the shareholder vote on the Proposed Transaction is scheduled to be completed by late summer 2011. The time constraints arising from a potential shareholder vote on this merger by late summer 2011 renders ordinary motions' practice under Sup. Ct. Rule 9A

1

ineffectual.    Plaintiff requests a hearing on this Motion pursuant to Superior Court Rule 9A(c)(3), as Plaintiff intends to rely on expedited discovery in moving for a preliminary injunction under Rule 65.


Dated June 7, 2011                    Respectfully submitted,

                                      **BERMAN DEVALERIO**


                                      By: _____
                                      Norman Berman (BBO# 040460)
                                      Nathaniel L. Orenstein (BBO# 664513)
                                      One Liberty Square
                                      Boston, MA 02109
                                      Tel. (617) 542-8300
                                      Fax (617) 542-1194
                                      nberman@bermandevalerio.com
                                      norenstein@bermandevalerio.com


                                      Attorneys for Plaintiff, MAZ Partners, LP

OF COUNSEL:

**WOLF POPPER LLP**
845 Third Avenue
New York, New York 10022
(212) 759-4600

2

COMMONWEALTH OF MASSACHUSETTS

ESSEX, SS.                                SUPERIOR COURT
                                          DEPARTMENT OF THE TRIAL COURT
                                          CIVIL ACTION NO. 11-1041

| | |
|---|---|
| MAZ PARTNERS LP, on behalf of itself and all others similarly situated,<br><br>                     Plaintiff,<br><br>      v.<br><br>BRUCE A. SHEAR, DAVID E. DANGERFIELD, WILLIAM F. GREICO, HOWARD W. PHILLIPS, DONALD E. ROBAR, DOUGLAS J. SMITH, PHC, INC., ACADIA HEALTHCARE COMPANY, INC., and ACADIA MERGER SUB LLC,<br><br>                     Defendants. | |

## PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF EMERGENCY MOTION FOR EXPEDITED DISCOVERY

Plaintiff, a holder of Class A Shares of PHC, Inc., d/b/a Pioneer Behavioral Health ("PHC" or the "Company") on behalf of a "Proposed Class" of similarly situated holders of PHC's Class A Shares, hereby moves for an Order directing discovery to proceed on an expedited basis, in anticipation of its motion to enjoin a proposed merger between PHC and Acadia Healthcare Company, Inc. ("Acadia") (the "Proposed Transaction").

Plaintiffs must move for expedited discovery due to Defendant Shear's (PHC's President, Chief Executive Officer, and Director) and PHC's other Directors' (cumulatively the "Individual Defendants'")[1] decision to sell the Company, their serious breaches of fiduciary duty in the

---

[1] PHC's Board of Directors consists of Bruce A. Shear, David E. Dangerfield, William F. Greico, Howard W. Phillips, Donald E. Robar, and Douglas J. Smith (the "Board").

1

negotiation and approval of the Proposed Transaction, the irreparable harm currently being inflicted upon Plaintiff and members of the Proposed Class, the additional irreparable harm that will be inflicted upon Plaintiff and members of the Proposed Class if the Proposed Transaction is in fact completed as it is currently structured, and the short time-frame announced by the Company. Upon deciding to sell PHC to a new controlling entity, the Individual Defendants were under an obligation to seek the best price possible for all PHC shareholders, including those holding PHC's Class A Shares. Instead, the Individual Defendants negotiated special merger consideration for themselves and Defendant Shear, and are now thwarting other potential suitors from making bids for PHC. Defendants also continue to withhold fundamental information about Acadia that would allow Class A Shareholders to assess the actual value of the merger consideration they are slated to receive and have placed the Proposed Transaction on the fast track and may close the transaction as early as August 1.[2]

Plaintiff can show good cause for expedited discovery. Given the limited time frame for the closing of the Proposed Transaction, the ordinary course of discovery proceedings would be ineffective since, by the time discovery responses are due, the Proposed Transaction may be complete. Also, Plaintiff can make a preliminary showing that Defendants breached their fiduciary duties and that they have and will sustain irrevocable harm. Defendants can show little prejudice resulting from expedited discovery, particularly since Plaintiff's request is limited to discovery related to the Proposed Transaction.[3] As such, Plaintiff respectfully requests an Order allowing it to take discovery on an expedited basis

---

[2] PHC has announced that it expects the transaction to be "completed in late summer 2011." This phrase, while vague, may be reasonably read to be as early as August 1, 2011.

[3] Plaintiff's First Document Request, which were served on Defendants along with this Motion are attached as Exhibit A.

2

## BACKGROUND

PHC is a Massachusetts corporation that is headquartered at 200 Lake Street, Suite 200, Peabody, Massachusetts, 01960. The Company is a national health care company, which operates subsidiaries specializing in behavioral health services including the treatment of substance abuse, which includes alcohol and drug dependency and related disorders and the provision of psychiatric services. The Company also operates help lines for employee assistance programs, call centers for state and local programs and provides management, administrative and online behavioral health services.

On May 24, 2011, the Company issued a press release announcing that PHC's Board had unanimously approved an agreement under which Acadia would exchange each of the outstanding shares of PHC's Class A common stock for ¼ of a share of Acadia common stock. There is currently no public market for Acadia's common stock and Acadia has not released even basic financial information about itself to PHC's Class A Shareholders. The only information that Defendants have made available to PHC's Class A Shareholders, is that the post-transaction combined company will have "pro forma net funded indebtedness of approximately $285 million." Accordingly, PHC's Class A Shareholders are unable to make any assessment of the value of the merger consideration due to them, aside from the one statement.

In addition to the difficulty of valuing the merger consideration for the Class A Shareholders, there are other features of the Proposed Transaction that suggest that the Proposed Transaction was negotiated using an unfair process. Unlike the Class A Shareholders who are only receiving Acadia stock as merger consideration, Defendant Shear and the Class B Shareholders will be receiving $5 million cash, in addition to the Acadia shares. The process was further tainted by the fact that PHC's financial advisor is Jeffries & Company, Inc. Jeffries

3

& Company, Inc. is affiliated with Jeffries Finance LLC, one of the co-financiers of the Proposed

Transaction on behalf of Acadia

Defendants are attempting to push through the Proposed Transaction by "late summer

2011" and have still not provided sufficient information to Plaintiff or the Proposed Class about

the details of the Proposed Transaction to allow for an informed vote. Expedited discovery is

necessary for Plaintiff and the Proposed Class so that they might assess and ensure that the

Proposed Transaction is fair to PHC's Class A Shareholders, and have a reasonable opportunity

to enjoin the transaction before it closes.

## ARGUMENT

### I.   STANDARDS OF LAW GOVERNING EXPEDITED DISCOVERY

Massachusetts Rule of Civil Procedure 34(b) provides that the time for service and

responses to discovery may be shortened by the Court.[4] *See also Juan v. La Rosa Del Monte*

*Express, LLC*, 2005 WL 3489877, at *7 (Mass. Super. Oct. 28, 2005) (allowing limited

discovery so that the parties and the Court could "join the issue more quickly" despite the

moving party failing to comply with Rule 9A); *Acordia Northeast, Inc. v. Academic Risk Res. &*

*Ins.*, LLC, No. 045601BLS2, 2005 WL 1009537 at *1-*3 (Mass. Super. Jan. 13, 2005) (ordering

mutual expedited discovery); *Prozina Shipping Co., Ltd. v. Thirty-Four Automobiles*, 179 F.R.D.

41, 47 (D. Mass. 1998) (allowing motion for expedited discovery).

While there are few Massachusetts cases addressing issues involved in corporate

transaction cases, Delaware law may be instructive. *See, e.g., Coggins v. New Eng. Patriots*

*Football Club*, 397 Mass. 525 (Mass. 1986) (explaining that Delaware law may be instructive in

such cases); *Piemonte v. New Boston Garden Corp.*, 377 Mass. 719, 726 (Mass. 1979) (deciding

---

[4] Emergency motions, such as the one here, are exempt from the requirements of Massachusetts Superior Court Rule 9A. *See* Massachusetts Superior Court Rule 9A(e)(1).

4

that Delaware case law is "instructive but not binding"); *Weitman v. Tutor*, 24 Mass. L. Rep. 343 (Mass. Super. Ct. 2008) (citing to Delaware law in analyzing whether plaintiff was entitled to expedited discovery); *Gent v. Teradyne, Inc.*, 24 Mass. L. Rep. 56 (Mass. Super. Ct. 2008) (Looking to Delaware law to examine general corporate governance issues). Delaware courts routinely handle litigation challenging corporate transactions such as the one at issue here.

In a merger-related action such as this one, Delaware courts routinely permit a plaintiff to conduct discovery on an expedited basis because of the potential for irreparable harm to shareholders if a merger or acquisition is consummated. *See, e.g., County of York Employees Ret. Plan v. Merrill Lynch & Co.*, No. 4066-VCN, 2008 Del. Ch. LEXIS 162 *9, 2008 WL 4824053 ("[T]his Court follows a tradition of acting 'with a certain solicitude towards for [sic] plaintiffs in this procedural setting and thus has followed the practice of erring on the side of expediting discovery."); *Allen v. News Corp.*, No. Civ-A-979-N, 2005 WL 415095 (Del. Ch. Feb. 3, 2005); *ODS Techs., L.P. v. Marshall*, 832 A.2d 1254, 1262 (Del. Ch. 2003). Thus, to make the necessary showing for expedited discovery, a plaintiff need only make a "showing of good cause why that is necessary." *County of York*, 2008 Del. Ch. LEXIS 162 at *9 (Del. Ch. Oct. 28, 2008) (granting expedited discovery where Plaintiffs made "colorable" claims that the directors breached their fiduciary duties and alleged irreparable harm "in the most cursory fashion").

## II.   PLAINTIFF HAS SHOWN GOOD CAUSE FOR WHY DISCOVERY IS NECESSARY ON AN EXPEDITED BASIS

Plaintiff can show good cause to conduct discovery on an expedited basis. To wit, the Individual Defendants violated their fiduciary duties to Plaintiff while negotiating and approving the Proposed Transaction. If the Individual Defendants succeed in completing the Proposed

5

Transaction, Plaintiff and the Proposed Class will suffer irreparable harm. Plaintiff seeks to preliminarily enjoin the Proposed Transaction, which is scheduled to close in the "late summer of 2011." As Plaintiff served both their summons and discovery requests upon Defendants on June 7, 2011, the earliest Plaintiff can expect to receive discovery responses from Defendants is July 22, 2011, which would provide Plaintiff with a mere twelve days before the Proposed Transaction might close. This is neither sufficient time for Plaintiff to review the discovery, let alone prepare and brief the anticipated motion for a preliminary injunction, nor is it sufficient time for the Court to hear argument and consider the anticipated motion. The pace of normal pretrial discovery will clearly prejudice Plaintiff since, by the time discovery responses are due, the Proposed Transaction may essentially be completed. Expedited discovery is necessary to allow Plaintiff to enjoin this transaction and thereby protect itself and the other public shareholders of PHC from this irreparable harm.

### A. Individual Defendants Breached Their Fiduciary Duties to Plaintiff

There are a number of procedural defects and deal terms that are materially unfair to Plaintiff and the Class and support Plaintiff's contention that the Individual Defendants breached their fiduciary duties. Expedited discovery will allow Plaintiff to further examine these issues:

a)  The Individual Defendants, have failed to disclose, to date, the material non-public information in their possession, including the full extent of the future earnings potential of PHC and its expected increase in profitability;

b)  The Defendants have failed to disclose any information about the current value of Acadia, the number of current Acadia shareholders, and other material information about the value of the proposed merger consideration;

6

c) Four of the six members of PHC's Board are controlled by Defendant Shear. According to the Company's Annual Report "Bruce Shear can establish, maintain and control business policy and decisions by virtue of his control of the election of the majority of the members of the board of directors";

d) Defendant Shear and the other Individual Defendants had a material conflict of interest while negotiating the Proposed Transaction on behalf of PHC's Class A Shareholders because they were also negotiating on behalf of the Class B Shareholders. Defendant Shear holds 93% of all shares and negotiated special consideration, including a $5 million cash payment, for himself and the other Class B Shareholders;

e) As a holder of a majority of the Class B shares, Defendant Shear has personal veto power over any other potential acquisition of PHC;

f) Under Defendant Shear's change-in-control agreement with the Company, upon a change of control, Shear is entitled to a substantial "change-in-control" premium from the Company. That premium in connection with this merger totals more than $1.3 million;

g) PHC's Board granted themselves options 3 months earlier this year so that they could receive extra consideration prior to the Proposed Transaction;

h) There is no evidence that the Board shopped the Company in order to obtain the best possible consideration for PHC's Class A stockholders;

i) The Board hired a financial adviser for this transaction, Jeffries & Company, Inc., who stands on both sides of the Proposed Transaction, by virtue of its affiliate, Jeffries Finance, LLC being a co-financier of the Proposed Transaction.

7

j) The Merger was not analyzed or recommended by a "special committee" of independent Board members;

k) Section 4.19 of the Merger Agreement, entitled "Pioneer Board Approval; Vote Required," provides that "[t]he only votes of the holders of any class of capital stock of Pioneer necessary to approve this Agreement is the affirmative vote of holders of at least (i) two-thirds of the outstanding Pioneer Class A Common Stock and Pioneer Class B Common Stock entitled to vote, voting together as a single class, with the holders of Pioneer Class A Common Stock having one vote per share and the holders of the Pioneer Class B Common Stock having five votes per share, (ii) two-thirds of the outstanding Pioneer Class A Common Stock entitled to vote, voting as a single class, and (iii) two-thirds of the outstanding Pioneer Class B Common Stock entitled to vote, voting as a single class." The voting agreements entered into by the Individual Defendants have ensured that conditions (i) and (iii) have already been satisfied;

l) There is a "no solicitation" provision barring the Board and any Company personnel from attempting to procure a price in excess of the amount in the Proposed Transaction. This section also demands that the Company terminate any and all prior or on-going discussions with other potential suitors;

m) There is a "matching rights" provision providing that if an unsolicited bidder were to submit a superior proposal to Acadia's, prior to recommending that "superior proposal," PHC is required to negotiate with Acadia to make such adjustments in the terms and conditions of the Merger Agreement "so that such [competing] Acquisition Proposal would cease to constitute a Superior Proposal." This "matching rights"

8

provision has the effect of discouraging potential bidders from investing the time and costs required to make a bid for the Company and guarantees the only suitor will be Acadia;

n) A termination fee of $3 million must be paid to Acadia by PHC if the Company decides to pursue another offer, thereby essentially requiring that the alternate bidder agree to pay a naked premium for the right to provide the shareholders with a superior offer.

"The requirement of fairness is unflinching in its demand that where one stands on both sides of a transaction, he has the burden of establishing its entire fairness, sufficient to pass the test of careful scrutiny by the courts." *Coggins v. New Eng. Patriots Football Club*, 397 Mass. 525, 531 (Mass. 1986) (citing to Delaware law and explaining that Delaware's interpretation of corporate law is instructive). "Where the director's duty of loyalty to the corporation is in conflict with his self-interest the court will vigorously scrutinize the situation." *American Discount Corp. v. Kaitz*, 348 Mass. 706, 711 (1965). "The court is justified in exercising its equitable power when a violation of fiduciary duty is claimed." *Coggins* 397 Mass. at 532.

Controlling shareholders also have a fiduciary duty of disclosure to the minority. *Horton v. Benjamin*, 7 Mass. L. Rep. 700 (Mass. Super. Ct. 1997). Indeed, Delaware law agrees that PHC shareholders are entitled to all of the material facts necessary for them to make an informed decision to accept or reject the Proposed Transaction. *See Joseph v. Shell Oil Co.*, 482 A.2d 335, 341 (Del. Ch. 1984). Moreover, when faced with this type of decision, shareholders are entitled to an accurate description of the process used by directors in deciding to support a merger and the reasons supporting their decision. *Nagy v. Bistricer*, 770 A.2d 43, 59 (Del. Ch. 2000). The

9

duty of disclosure "requires that directors disclose fully and fairly all material information within the board's control." *Skeen v. Jo-Ann Stores, Inc.*, 750 A.2d 1170, 1172 (Del. Ch. 2000). This duty also requires that Defendants not misrepresent any of the information disclosed to shareholders. *Malone v. Brincat*, 722 A.2d 5, 12 (Del. 1998) (requiring disclosures to "provide a balanced, truthful account of all matters"); *see also In re Pure Resources, Inc. S'holders Litig.*, 808 A.2d 421, 448 (Del. Ch. 2002) ("When a document ventures into certain subjects, it must do so in a manner that is materially complete and unbiased by the omission of material facts.").

These facts show that the Individual Defendants have breached their fiduciary duties to PHC's Class A Shareholders. Expedited discovery is likely to provide additional information in support of these facts and may even show other ways by which the Individual Defendants have violated their fiduciary duties.

**B. If Defendants Complete the Proposed Transaction, Plaintiffs Will Suffer Irreparable Harm**

There are several aspects of the Proposed Transaction that are causing or will cause irreparable harm to Plaintiff:

A. The deal protection measures agreed to by PHC are currently deterring potential suitors from making competing bids for PHC;

B. If the Proposed Transaction is consummated, the Class A Shareholders will receive inferior consideration to the consideration that the Class B Shareholders will receive;

C. Defendants have failed to provide any meaningful information that would allow Class A Shareholders to make an informed vote on the Proposed Transaction; and

10

D. Once the Proposed Transaction has been completed, the new company will have a net indebtedness of $285 million (the Company currently has equity of more than $17 million). If Plaintiff succeeds on the merits after the Proposed Transaction has been completed, the combined company may not have any money to satisfy any monetary award.

A shareholder's right to make an informed vote may "provide a basis for injunctive relief because a substitutional damages remedy would be inadequate." *Weitman v. Tutor*, 24 Mass. L. Rep. 343 (citing to two Delaware cases, *Eisenberg v. Chicago Milwaukee Corp.,* 537 A.2d 1051, 1062 (Del.Ch. 1987) and *Sealy Mattress Co. of New Jersey, Inc. v. Sealy, Inc.,* 532 A.2d 1324, 1342 (Del.Ch. 1987)). In cases involving a breach of fiduciary duty in connection with a sale of control transaction, "injunctive relief may be the only relief reasonably available to shareholders." *Police & Fire Ret. Sys. v. Bernal*, 2009 Del. Ch. LEXIS 111 (Del. Ch. June 26, 2009). The deal protections enacted by the Defendants are currently having an adverse impact on PHC shareholders by deterring potential bidders. *See Id.* at *6 ("Harm resulting from such deterrence is incalculable"). Moreover, the Individual Defendants have thus far failed to disclose information about the future earnings potential of PHC and its expected increase in profitability, as well as the actual value of the proposed merger consideration.[5] "The right to cast an informed vote is specific, and its proper vindication in this case requires a specific remedy such as an injunction, rather than a substitutionary remedy such as damages." *Gilmartin v. Adobe Res. Corp.*, 1992 WL 71510, *13 (Del. Ch. Apr. 6, 1992).

---

[5] As explained above, Plaintiff and PHC's Class A Shareholders have very little information about the true value of the merger consideration.

11

The insufficiency of monetary damages is all the more acute in this case. Among the few disclosures provided by the Company, was that post-transaction, the combined entity would have "pro forma net funded indebtedness of approximately $285 million." This fact alone suggests that once the Proposed Transaction is complete, Plaintiff and the Proposed Class may be unable to collect a monetary judgment, thereby supporting Plaintiff's contention that it will be irreparably harmed by this Proposed Transaction.

### III.   DEFENDANTS WILL FACE NO PREJUDICE FROM EXPEDITED DISCOVERY BECAUSE PLAINTIFF REQUESTS ONLY LIMITED AND NARROWLY FOCUSED DISCOVERY

Defendants will face no prejudice from expedited discovery in this case. The corporate Defendants have already been served with the Complaint and document requests, are aware of the specific limited discovery Plaintiff seeks, and will have adequate opportunity to gather documents in response to Plaintiff's discovery requests. Plaintiff's discovery requests are limited in scope (they focus on events and information within the past year) and narrowly focused to documents and testimony regarding the Board's decision to approve the Proposed Transaction, the value of the Company, and other information that would be material to PHC's Class A Shareholders in voting on whether to approve the Proposed Transaction. Such discovery will pose little burden to Defendants to produce.

Defendants will be unable to argue any prejudice from having to respond to such discovery on an expedited basis. Defendants are aware of Plaintiff's limited discovery request and should be able to gather documents in response rather quickly. Furthermore, since the Proposed Transaction was announced just within the past month, requested documents have likely been viewed or prepared by Defendants very recently and would take little effort to gather and produce.

12

Accordingly, *immediate* discovery is critical to the injunctive relief sought by Plaintiff.

WHEREFORE, Plaintiff respectfully requests that the Court enter the accompanying Proposed Order expediting discovery. Plaintiffs have attached the Proposed Order as Exhibit B.

Dated: June 7, 2011                         Respectfully submitted,

                                            **BERMAN DEVALERIO**


                                            By: _____
                                            Norman Berman (BBO# 040460)
                                            Nathaniel L. Orenstein (BBO# 664513)
                                            One Liberty Square
                                            Boston, MA 02109
                                            Tel. (617) 542-8300
                                            Fax (617) 542-1194
                                            nberman@bermandevalerio.com
                                            norenstein@bermandevalerio.com


                                            Attorneys for Plaintiff, MAZ Partners, LP

OF COUNSEL:

**WOLF POPPER LLP**
845 Third Avenue
New York, New York 10022
(212) 759-4600

13

COMMONWEALTH OF MASSACHUSETTS

ESSEX, SS.                                    SUPERIOR COURT
                                             DEPARTMENT OF THE TRIAL COURT
                                             CIVIL ACTION NO. 11-1041

| | |
|---|---|
| MAZ PARTNERS LP, on behalf of itself and all others similarly situated,<br><br>                                        Plaintiff,<br><br>                    v.<br><br>BRUCE A. SHEAR, DAVID E. DANGERFIELD, WILLIAM F. GREICO, HOWARD W. PHILLIPS, DONALD E. ROBAR, DOUGLAS J. SMITH, PHC, INC., ACADIA HEALTHCARE COMPANY, INC., and ACADIA MERGER SUB LLC,<br><br>                                        Defendants. | |

### [PROPOSED] ORDER GRANTING EXPEDITED DISCOVERY

THIS MATTER being before the Court upon the application of Plaintiff, and it appearing therefrom that an expedited discovery schedule to permit Plaintiff to seek, at the earliest possible date, a hearing on whether it is entitled to a preliminary injunction and for good cause shown:

IT IS ON THIS ___ day of June, 2011,

ORDERED, that:

To provide the Court with the requisite information for the preliminary injunction hearing and for good cause shown, Defendants shall provide Plaintiff's counsel with the following discovery:

1.  Within fourteen (14) days of the Court's Order, Defendants shall produce to Plaintiff the documents and things requested by Plaintiff in its First Request For The Production Of Documents Directed To All Defendants.

1

2.  Within fourteen (14) days after Defendants' production of documents, Defendants shall make witnesses available for deposition.

_____
Justice of the Superior Court

# Commonwealth of Massachusetts
## County of Essex
## The Superior Court

CIVIL DOCKET # ESCV2011-01041-D
Courtroom CtRm 2 (Lawrence)

RE:   **MAZ Partners LP on behalf of itself and all others v Shear et al**
TO:
Norman Berman, Esquire
Berman DeValerio Pease Tavacco Burt & Pucillo
1 Liberty Square
Boston, MA 02109

## SCHEDULING ORDER FOR  F  TRACK

You are hereby notified that this case is on the track referenced above as per Superior Court Standing Order 1-88. The order requires that the various stages of litigation described below must be completed not later than the deadlines indicated, and case shall be resolved and judgment shall issue **03/23/2013**.

| STAGES OF LITIGATION | SERVED BY | FILED BY | HEARD BY |
|---|---|---|---|
| Service of process made and return filed with the Court | 08/31/2011 | 08/31/2011 | |
| Response to the complaint filed (also see MRCP 12) | | 09/30/2011 | |
| All motions under MRCP 12, 19, and 20 | 09/30/2011 | 10/30/2011 | 11/29/2011 |
| All motions under MRCP 15 | 09/30/2011 | 10/30/2011 | 11/29/2011 |
| All discovery requests and depositions served and non-expert depositions completed | 03/28/2012 | | |
| All motions under MRCP 56 | 04/27/2012 | 05/27/2012 | |
| Final pre-trial conference held and/or firm trial date set | | | 09/24/2012 |
| Case shall be resolved and judgment shall issue by **03/23/2013** | | | 03/23/2013 |

- The final pre-trial deadline is **not the scheduled date of the conference**.
- **You will be notified of that date at a later time.**
- **Counsel for plaintiff must serve this tracking order on defendant before the deadline for filing return of service.**

Dated: 06/02/2011

Thomas H. Driscoll Jr.
Clerk of the Court

Telephone: (978) 687-7463

Disabled individuals who need handicap accommodations should contact the Administrative Office of the Superior Court at (617) 788-8130 --Check website as to status of case: http://ma-trialcourts.org/tcic  1033169 Indoc01 vernaved